# Exhibit B

 **CT Corporation**

**Service of Process Transmittal**
03/22/2021
CT Log Number 539253607

TO:   General Counsel
      Daimler Trucks North America LLC
      4555 N CHANNEL AVE, HQ637B-LGL
      PORTLAND, OR 97217-7613

RE:   **Process Served in Pennsylvania**

FOR:  Daimler Trucks North America LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JAMIE LOCKWOOD, Pltf. vs. RYDER VEHICLE SALES, LLC, et al., Dfts. // To: DAIMLER TRUCKS NORTH AMERICA, LLC<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2020CV1483CV |
| **NATURE OF ACTION:** | Product Liability Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Harrisburg, PA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/22/2021 at 12:02 |
| **JURISDICTION SERVED :** | Pennsylvania |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/23/2021, Expected Purge Date: 03/28/2021<br><br>Image SOP<br><br>Email Notification,  General Counsel  Cynthia.scott@Daimler.com<br><br>Email Notification,  Truc Ong  truc.ong@daimler.com<br><br>Email Notification,  Sara Dorland  Sara.Dorland@Daimler.com<br><br>Email Notification,  Marni Larose  marni.larose@daimler.com |
| **REGISTERED AGENT ADDRESS:** | CT Corporation System<br>600 N. 2nd Street<br>Suite 401<br>Harrisburg, PA 17101<br>866-331-2303<br>CentralTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s)

 CT Corporation

**Service of Process Transmittal**
03/22/2021
CT Log Number 539253607

**TO:**   General Counsel
Daimler Trucks North America LLC
4555 N CHANNEL AVE, HQ637B-LGL
PORTLAND, OR 97217-7613

**RE:**   **Process Served in Pennsylvania**

**FOR:**   Daimler Trucks North America LLC  (Domestic State: DE)

of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**CT**

## Service Intended For:

**Daimler Trucks North America, LLC**





**McNees**
**Wallace & Nurick LLC**

100 Pine Street • PO Box 1166 • Harrisburg, PA 17108-1166
Tel: 717.232.8000 • Fax: 717.237.5300

D. Joseph Chapman
Direct Dial: 717.237.5375
Fax: 717.237.5300
jchapman@mcneeslaw.com

March 19, 2021

**VIA HAND DELIVERY**

Dauphin County Sheriff
1st Floor, Room 104
101 Market Street
Harrisburg, PA 17101

      **RE:**   **Lockwood v. Ryder Vehicle Sales, LLC**
            **Docket No.: 2020 CV 1483**

Dear Sheriff:

Enclosed for service, please find a Complaint in the above-referenced matter. This Complaint is to be served upon Defendant Daimler Trucks North America LLC. Daimler Trucks North America LLC has a registered agent located at CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, PA 17101. We have enclosed our firm's check in the amount of $58.00 for your service fee.

Sincerely,

McNEES WALLACE & NURICK LLC

By                            
      D. Joseph Chapman

DJC:aak
Enclosures

RECEIVED
OFFICE OF
PROTHONOTARY

2021 MAR 12  PM 12: 48

DAUPHIN COUNTY
PENNA

**McNEES WALLACE & NURICK LLC**
David Joseph Chapman, Esquire
I.D. No. 209519
Logan Hetherington, Esquire
I.D. No. 326048
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
jchapman@mcneeslaw.com
lhetherington@mcneeslaw.com

*Attorneys for Plaintiff*

IN THE COURT OF COMMON PLEAS
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE LOCKWOOD, | : | |
| | : | NO.  2020 CV 1483 CV |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION-LAW |
| | : | |
| RYDER VEHICLE SALES, LLC, RYDER | : | |
| TRANSPORTATION SERVICES, RYDER | : | |
| TRUCK RENTAL, RYDER TRUCK RENTAL, | : | |
| INC., RYDER SYSTEM, INC., DAIMLER | : | |
| TRUCKS NORTH AMERICA, LLC, AND | : | |
| DETROIT DIESEL CORPORATION, | : | |
| | : | |
| Defendants | : | JURY TRIAL DEMANDED |

## NOTICE

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

**NOTICE**
**CONCERNING MEDIATION OF ACTIONS PENDING BEFORE**
**THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY**

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution.  Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule I001 to encourage the use of mediation.  This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session.  The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536.  Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

**AVISO**

USTED HA SIDO DEMANDADO/A EN CORTE.  Si usted desea defenderse de las demandas que se presentan mas adelante en las siguientes paginas, debe tomaraccion dentro de los proximos veinte (20) dias despues de la notificacion de esta Demanda y Aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objecciones a, las demandas presentadas aqui en contra suya.  Se le advierte de que si usted falla de tomar accion como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamacion o remedio solicitado por el demandante puede ser dictado en contra suya por la Corte sin mas aviso adicional.  Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO <u>INMEDIATAMENTE. SI</u> USTED NO TIENE UN ABOGADO, LLAME O VAYA A LA SIGUIENTE OFICINA. ESTA OFICINA PUEDE PROVEERLE INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE AGENCIAS QUE OFREZCAN SERVICIOS LEGALES SIN CARGO O BAJO COSTO A PERSONAS QUE CUALIFICAN.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

**AVISO**
**REFERENCES A LA MEDIACIÔN DE LAS ACCIONES PENDIENTES ANTES LA CORTE DE SOPLICAS COMUNES DEL CONDADO DE DAUPHIN**

Los jueces de la corte de sûplicas comunes del condado de Dauphin creen que la mediación de pleitos es un componente muy importante de la resolución del conflicto.  Virtualmente todos los pleitos pueden beneficiar de cierta manera de la mediación.

La code ha adoptado la regla local de condado de Dauphin 1001 para animar el use de la mediación.  Esta alarma temprana permite a litigantes determiner la mejor época durante la vida de su pleito para una sesión de la mediación.  El intento de esta alarma temprana es actuar sobre la mediación de la buena fe en el tiempo óptimo.

La asociación de la barra del condado de Dauphin proporciona servicios de la mediación y se puede alcanzar en 717-232-7536.  La sesión libre de la mediación para los favorables casos del bono se refinio por MidPenn que los servicios juridicos están disponibles con el DCBA.

-3-

**McNEES WALLACE & NURICK LLC**
David Joseph Chapman, Esquire
I.D. No. 209519
Logan Hetherington, Esquire
I.D. No. 326048
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
jchapman@mcneeslaw.com
lhetherington@mcneeslaw.com

RECEIVED
OFFICE OF
PROTHONOTARY

2021 MAR 12  PM 12: 48

DAUPHIN COUNTY
PENNA

*Attorneys for Plaintiff*

---

IN THE COURT OF COMMON PLEAS
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE LOCKWOOD, | : | |
| | : | NO.  2020 CV 1483 CV |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION-LAW |
| | : | |
| RYDER VEHICLE SALES, LLC, RYDER | : | |
| TRANSPORTATION SERVICES, RYDER | : | |
| TRUCK RENTAL, RYDER TRUCK RENTAL, | : | |
| INC., RYDER SYSTEM, INC., DAIMLER | : | |
| TRUCKS NORTH AMERICA, LLC, AND | : | |
| DETROIT DIESEL CORPORATION, | : | |
| | : | |
| Defendants | : | JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

AND NOW, comes Plaintiff, Jamie Lockwood, by and through her attorneys, McNees

Wallace & Nurick, LLC, and sets forth the following:

1.      This case arose on or about September 12, 2019, when Plaintiff Jamie Lockwood

was seriously and permanently injured by carbon monoxide (CO) gas emitted from the semi-

truck she drove for work for DRT Logistics.

2.      The semi-truck Ms. Lockwood was driving on that day (hereinafter, the "Truck")

was a 2019 Freightliner Cascadia with vehicle identification number 1FUJHLDR4LLLU9827, and

was powered by a Detroit Diesel DD15 Engine.

**PARTIES**

3.      Jamie Lockwood is an adult individual residing at 18 Rays Drive, Newville,

Cumberland County, PA 17241.

4.      Ryder Vehicle Sales, LLC is a Florida limited liability company registered with the

Pennsylvania Department of State's Corporations Bureau, whose principal place of business is

Florida. Ryder Vehicle Sales, LLC routinely does business in Dauphin County, Pennsylvania.

5.      Ryder Transportation Services is a fictious name registered with the Pennsylvania

Department of State's Corporations Bureau, whose principal place of business is Florida. Ryder

Transportation Services routinely does business in Dauphin County, Pennsylvania.

6.      Ryder Truck Rental is a fictious name registered with the Pennsylvania

Department of State's Corporations Bureau, whose principal place of business is Florida. Ryder

Truck Rental routinely does business in Dauphin County, Pennsylvania.

7.      Ryder Truck Rental, Inc. is a Florida corporation registered with the Pennsylvania

Department of State's Corporations Bureau, whose principal place of business is Florida. Ryder

Truck Rental, Inc. routinely does business in Dauphin County, Pennsylvania.

8.      Ryder System, Inc. is a Florida corporation registered with the Pennsylvania

Department of State's Corporations Bureau, whose principal place of business is Florida. Ryder

System, Inc. routinely does business in Dauphin County, Pennsylvania.

-2-

9.      Daimler Trucks North America, LLC (hereinafter "Daimler") is a Delaware limited liability company, registered with Pennsylvania Department of State's Corporation Bureau, whose principal place of business is in Oregon.  Daimler routinely does business in Dauphin County, Pennsylvania.

10.      Plaintiff avers Defendant Daimler designed, tested, and/or manufactured the Truck and some components of the Truck's exhaust system, which poisoned Ms. Lockwood, and Defendant Daimler failed to adequately warn of defects in the Truck and its components and systems.

11.      Detroit Diesel Corporation, (hereinafter "Detroit Diesel") is a Delaware corporation, whose principal place of business is Michigan.  Detroit Diesel routinely does business in Dauphin County, Pennsylvania.

12.      Detroit Diesel is a subsidiary of Daimler.

13.      Plaintiff avers Defendant Detroit Diesel designed, tested, and/or manufactured the Truck's engine and some components of the Truck's exhaust system, which poisoned Ms. Lockwood, and Defendant Detroit Diesel failed to adequately warn of defects in the Truck's engine and its components and systems.

## JURISDICTION AND VENUE

14.      Daimler is engaged in the sales of semi-truck tractors, and Daimler sells Freightliner Cascadia trucks in Pennsylvania, and more specifically in Dauphin County.

15.      Either directly, or through agreements with either subsidiaries, dealers, or agents, Daimler's Freightliner trucks are sold at ten or more locations throughout Pennsylvania,

-3-

according to its sales website, available at https://freightliner.com/dealer-search/ (last visited March 10, 2020).

16.     In fact, Daimler's Freightliner trucks are sold at two locations owned by it, its subsidiaries, dealers, or agents in Dauphin County:  Freightliner Western Star of Harrisburg, located at 4303 Lewis Road, Harrisburg, Pennsylvania; and, Freightliner of Harrisburg, located at 4400 Chambers Hill Road, Harrisburg, Pennsylvania.

17.     A foreign association which registers with the Commonwealth of Pennsylvania is subject to general personal jurisdiction in accord with 42 Pa. C.S.A. § 5301, *et seq.*

18.     Daimler registered with Pennsylvania's Corporations Bureau, naming its agent for service as CT Corporation in Philadelphia.

19.     As Detroit Diesel is a subsidiary of Daimler, it sells its engines in Pennsylvania and Dauphin County through the same means as was described in the previous paragraphs recounting Daimler's contacts with Pennsylvania, including Dauphin County, and Detroit Diesel is well aware its engines will be components of Freightliner Cascadia trucks destined for Pennsylvania and Dauphin County.

20.     Ryder Vehicle Sales, LLC leases Freightliner Cascadia semi-trucks in Pennsylvania, and more specifically in Dauphin County at 971 Briarsdale Road, Harrisburg, Pennsylvania.

21.     Ryder Truck Rental leases Freightliner Cascadia semi-trucks in Pennsylvania, and more specifically in Dauphin County at 971 Briarsdale Road, Harrisburg, Pennsylvania.

22.     Ryder Truck Rental, Inc. leases Freightliner Cascadia semi-trucks in Pennsylvania, and more specifically in Dauphin County at 971 Briarsdale Road, Harrisburg, Pennsylvania.

-4-

23.    Ryder System, Inc. leases Freightliner Cascadia semi-trucks in Pennsylvania, and more specifically in Dauphin County at 971 Briarsdale Road, Harrisburg, Pennsylvania.

24.    Ryder Transportation Services leases Freightliner Cascadia semi-trucks in Pennsylvania, and more specifically in Dauphin County at 971 Briarsdale Road, Harrisburg, Pennsylvania.

25.    On information and belief, at this location (971 Briarsdale Road, Harrisburg, Pennsylvania) Freightliner trucks are leased, and it is a location where leased trucks are picked up by Ryder's customers in the Harrisburg Area.

26.    The lease agreement generally between DRT Logistics (Plaintiff's employer) and Ryder Truck Rental, Inc. d/b/a Ryder Transportation Services was negotiated and signed by DRT Logistics in Pennsylvania.

27.    The truck lease and service agreement which specifically addressed the Truck, was executed by DRT Logistics in Pennsylvania.

28.    Amendments to the general lease agreement between DRT Logistics and Ryder Truck Rental, Inc. d/b/a Ryder Transportation Services were negotiated and signed by DRT Logistics in Pennsylvania.

29.    Plaintiff, Plaintiff's medical providers, the technicians who inspected the Truck to find the CO leak, and Plaintiff's before and after witnesses are within easy driving distance of Harrisburg.

## OPERATIVE FACTS

30.     Detroit Diesel designed, tested, assembled, and/or manufactured the engine and component parts of the exhaust system so they were unreasonably dangerous to truck drivers, including Jamie Lockwood, because of their propensity to fail and emit carbon monoxide.

31.     Detroit Diesel failed to adequately warn truck drivers of this danger, either directly or through intermediaries.

32.     Daimler designed, tested, assembled, and/or manufactured the Truck including components of the exhaust system so they were unreasonably dangerous to truck drivers, including Jamie Lockwood, because of their propensity to fail and emit carbon monoxide.

33.     Daimler failed to adequately warn truck drivers of this danger, either directly or through intermediaries.

34.     The foreseeable risks of harm posed by Defendants' products could have been reduced or avoided by adoption of reasonable alternative designs.

35.     The danger posed by Defendants' products was concealed, not common knowledge, and not reasonably apparent to an ordinary truck driver, or Jamie Lockwood in particular.

36.     Detroit Diesel manufactured the engine installed in the Truck.

37.     Daimler manufactured the Truck incorporating Detroit Diesel's engine in the Truck.

38.     Daimler sold the Truck to Ryder System, Inc.

39.     Daimler sold the Truck to Ryder Truck Rental, Inc.

40.     Daimler sold the Truck to Ryder Vehicle Sales, LLC.

-6-

41.     Daimler sold the Truck to Ryder Truck Rental.

42.     Daimler sold the Truck to Ryder Transportation Services.

43.     Ryder Truck Rental, Inc. doing business as Ryder Transportation Services leased the Truck to DRT Logistics, Jamie Lockwood's employer at the time she was poisoned with carbon monoxide.

44.     The Truck was leased from Ryder to DRT Logistics in January 2019, at which point it was a new vehicle.

45.     DRT Logistics took possession of the Truck in June or July, 2019, at which point the Truck odometer reading was eleven (11) miles.

46.     The lease agreement between DRT Logistics and Ryder made Ryder responsible for service and maintenance for the Truck.

47.     The lease agreement between DRT Logistics and Ryder made Ryder responsible for a safety program and/or safety services for the Truck.

48.     The Truck was at Ryder's facility in Mechanicsburg, PA, at least three times before September 12, 2019, for service, maintenance, or safety checks.

49.     Ryder Defendants failed to properly inspect, maintain, and service the Truck to detect and eliminate an exhaust leak, and failed to warn Jamie Lockwood of the danger of exhaust leaks containing carbon monoxide.

50.     When Ryder leased the Truck to DRT, Ryder's employees knew the clamps, seals, and gaskets which are intended to keep dangerous gasses from escaping the engine could allow dangerous gases to escape when truck engines are new and still heating up and expanding.

-7-

51.     When Ryder leased the Truck to DRT, Ryder's employees knew an exhaust leak was common in new engines like the one in the Truck.

52.     On or about September 12, 2019, and in the months prior to that date, DRT Logistics ("DRT") employed Ms. Lockwood as a truck driver for local runs.

53.     Prior to September 12, 2019, Ms. Lockwood had not experienced symptoms of carbon monoxide poisoning as she drove for DRT.

54.     In the weeks prior to September 12, 2019, and on that day, Ms. Lockwood did not misuse the Truck, engine, exhaust system, or any other component parts.

55.     Ms. Lockwood used the Truck, engine, exhaust system, and other component parts in a manner reasonably foreseeable by Defendants.

56.     Defendants' improper or inadequate design, testing, assembly, manufacture, and warnings directly, proximately, and foreseeably caused Ms. Lockwood's harms and losses described below.

57.     On the evening of September 11, 2019, Ms. Lockwood slept at her own home, woke up on the morning of September 12, 2019, and experienced no immediate health issues.

58.     She prepared for work and drove her personal vehicle to the place where she parked the Truck in Newville, PA.

59.     She did her pre-trip inspection and began driving the Truck, headed for multiple stops throughout her day.

60.     At about 7:00 am, approximately thirty minutes after she started driving, Ms. Lockwood started to feel a headache.

61.     She continued to drive; and as her headache got worse she felt a weight on her chest and lost some sensation in her arms.

62.     Ms. Lockwood continued on her route and then contacted her boss.  It was decided she would finish her day early and go home.

63.     Ms. Lockwood drove to where she normally parked the Truck.  She parked the Truck and drove home.

64.     As she drove that morning, Ms. Lockwood had the air conditioning on in the Truck.

65.     She did not smell any gases or see any gases in the cabin of the Truck as she drove.

66.     From the time she got into the Truck to begin her runs for that day until she parked the Truck and got out, the Truck was exposing Jamie Lockwood to carbon monoxide.

67.     Carbon monoxide does not have a color or a smell.

68.     Ms. Lockwood did not know, nor should she reasonably have known, she was being exposed to carbon monoxide.

69.     The Truck's engine generated carbon monoxide, which leaked from the exhaust system and entered the Truck's cab, poisoning Ms. Lockwood.

70.     Ms. Lockwood suffered acute carbon monoxide exposure.

71.     After she got home, Ms. Lockwood called a friend, Heather Renecker, and told her she was not feeling well.  Ms. Renecker drove to Ms. Lockwood's home and found her ill, staring off into space.

72.    Ms. Renecker drove Ms. Lockwood to a local hospital, where she was diagnosed with carbon monoxide (CO) poisoning.

73.    Before being poisoned by CO, Ms. Lockwood was a hard-working truck driver supporting herself.

74.    Before being poisoned by CO, Ms. Lockwood was physically strong and active.

75.    Before being poisoned by CO, Ms. Lockwood did projects at her home such as redoing furniture, making holiday crafts, doing the mowing with both a push-mower as well as a riding mower, and tending to her flower beds.

76.    Before being poisoned by CO, Ms. Lockwood went dancing, enjoyed being out socially, visited with friends, and was an outgoing warm person.

77.    After being poisoned by carbon monoxide, Ms. Lockwood changed.  She is unable to drive a tractor-trailer and may be unable to hold a job at all.  Her harms and losses resulted from the carbon monoxide poisoning, and these were the foreseeable consequences of Defendants' conduct.  Those harms and losses include, but are not limited to, the following:

      a.    Anoxic brain injury;
      b.    Cognitive difficulties including memory problems, inability to focus, loss of train of thought, word finding, and executive functions.  She forgets what she was saying in the middle of a conversation, and forgets where she is going while driving.  She has difficulty managing finances, and is unable to safely watch her grandchild.;
      c.    Loss of physical balance;
      d.    Headaches which are sometimes severe;
      e.    Stuttering;
      f.    Tremors;
      g.    Inability to sleep consistently; and
      h.    Anxiety and increased depression.

78.    The Truck was not driven from the time it was parked by Ms. Lockwood on September 12, 2019, until it was picked up by Ryder.

-10-

79.     In the days after Ms. Lockwood's trip to the Emergency Room, the Truck was inspected by Ryder at the Ryder facility at 6330 Basehore Road, Mechanicsburg, Cumberland County, Pennsylvania.

80.     Once Ryder picked up the Truck from where Ms. Lockwood parked it, it was driven only minimal amounts necessary to get it on and off of a tow truck and into the shop in Mechanicsburg.

81.     Brian Chamberland, a Ryder employee at the shop in Mechanicsburg, inspected the Truck knowing there was a suspected carbon monoxide leak.

82.     Mr. Chamberland found a leak in the exhaust.

83.     Mr. Chamberland found a leak at a clamp in the U-pipe on the outbound side of the EGR valve.

84.     Mr. Chamberland found soot on both sides of the clamp in the U-pipe.

85.     Mr. Chamberland told his boss, Chuck Taylor, he found a leak.

86.     Chuck Taylor told Ms. Lockwood's supervisor, Josh Roy, they had found an exhaust leak near the Truck's heater box.

87.     The leak around the clamp in the U-pipe was a defect in the engine, exhaust, component of the Truck, and the Truck as a whole.

88.     Defendants acted through their employees, servants, agents, and apparent agents whose conduct was intended to further Defendant's business interests, and whose conduct was in the course and scope of their employment.

89.     As a sole result of Defendants' defective product, Plaintiff has incurred medical bills and will continue to incur medical bills, some of which may be subject to a recovery lien.

-11-

90.     As a sole result of Defendants' defective product, Plaintiff has undergone, and will continue to undergo in the future, pain and suffering.

91.     As a sole result of Defendants' defective product, Plaintiff has sustained a loss of life's pleasures and will sustain a loss of life's pleasures in the future.

92.     As a sole result of Defendants' defective product, Plaintiff has sustained embarrassment and humiliation and will endure further embarrassment and humiliation in the future.

93.     As a sole result of Defendant's defective product, Plaintiff suffered a loss of income in the past and a loss of earning capacity in the future.

94.     Plaintiff's injuries were directly and proximately caused by Defendant's defective product.

## COUNT I
## STRICT LIABILITY
## JAMIE LOCKWOOD v. DAIMLER TRUCKS NORTH AMERICA, LLC

95.     Plaintiff incorporates paragraphs 1-94 herein as if set forth in full.

96.     Defendant Daimler was engaged in the business of designing, testing, assembling, manufacturing, distributing, and selling the Truck and its components that caused Jamie Lockwood's carbon monoxide exposure, poisoning, and resulting injuries.

97.     The Truck and its component parts were in a defective condition when sold, causing the Truck and its components to be unreasonably dangerous to the Truck's drivers.

98.     The Truck reached Ms. Lockwood in a defective condition and without substantial change in its condition from when it left Daimler's control, or if its condition

deteriorated, such deterioration was foreseeable and a result of a pre-existing defect inherent in the Truck and its component parts.

99.     The Truck did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended way.

100.     The defective Truck physically harmed Ms. Lockwood by poisoning her with carbon monoxide.

101.     The poisoning was a direct, proximate, and foreseeable result of the defective condition of the Truck and its component parts which factually caused Ms. Lockwood's harm.

102.     The Truck should not allow carbon monoxide to leak from the exhaust system into the cab and poison the driver.

103.     Daimler was aware the user of the Truck would be truck drivers, such as Jamie Lockwood.

104.     Daimler was aware of issues with carbon monoxide leaks in their trucks prior to putting the Truck into the stream of commerce.

105.     The Truck was intended to be used to pull a trailer and move cargo from place to place, with an understanding that it would idle at times in its daily use.

106.     By putting a semi-truck into the stream of commerce to be used as intended, Daimler expressly and implicitly represented the Truck would not allow exhaust gases to escape into the passenger cabin and poison its intended users.

107.     Considering the risk-utility test, a reasonable person would conclude the possibility and seriousness of carbon monoxide poisoning from a leak in the Truck's exhaust

-13-

system outweighs the additional burden or cost to Daimler of making the Truck safe with a feasible alternative design.

108.    Daimler had a duty to warn the Truck's buyer, owner, and/or its drivers, directly and/or through intermediaries, that the Truck was in a defective condition and unreasonably dangerous to the Truck driver.

109.    Daimler's duty to warn continued even after the Truck was sold.

110.    Daimler failed to warn the Truck's buyer, owner, and/or drivers, either directly or through intermediaries, that the Truck was in a defective condition and unreasonably dangerous to the Truck's driver.

111.    Daimler failed to adequately instruct tractor-trailer mechanics, inspectors, technicians, repairmen, and/or drivers in how to detect and remedy the latent dangers in their products.

112.    Daimler is strictly liable for Jamie Lockwood's damages proximately caused by the defects in the Truck and its component parts, regardless of their fault.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT II
### NEGLIGENCE
### JAMIE LOCKWOOD v. DAIMLER TRUCKS NORTH AMERICA, LLC

113.    Paragraphs 1-94 are incorporated herein as if set forth in full.

114.    Defendant Daimler acted through its employees, servants, agents, and apparent agents whose conduct was intended to further Defendant's business interests, and whose conduct was in the course and scope of their employment.

-14-

115.    Defendant Daimler had a duty not to expose truck drivers, including Jamie

Lockwood, to a foreseeable risk of harm from the unreasonable danger of carbon monoxide

poisoning from their truck.

116.    Defendants breached this duty through its acts and omissions including:

      a.    Negligent design of the Truck and its components;
      b.    Negligent testing of the Truck and its components;
      c.    Negligent manufacturing of the Truck and its components;
      d.    Negligent assembly of the Truck and its components;
      e.    Failure to warn about defects in the Truck and its component parts
           resulting from the negligent design and manufacturing of the Truck; and
      f.    Failure to properly instruct tractor-trailer mechanics, inspectors,
           technicians, repairmen, and/or drivers in how to detect and remedy the
           latent dangers in their products.

117.    Daimler did not exercise the care required of reasonably careful product

designers, testers, manufacturers, assemblers, and sellers.

118.    Daimler's negligence was the proximate cause of Ms. Lockwood's exposure to

carbon monoxide, carbon monoxide poisoning, and the injuries she suffered.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration

limit in Dauphin County.

## COUNT III
## STRICT LIABILITY
## JAMIE LOCKWOOD v. DETROIT DIESEL CORPORATION

119.    Paragraphs 1-94 are incorporated herein as if set forth in full.

120.    Defendant Detroit Diesel was engaged in the business of designing, testing,

assembling, manufacturing, distributing, and selling the engine and component parts of the

exhaust system that caused Jamie Lockwood's carbon monoxide exposure and resulting

injuries.

121.     The engine and component parts of the exhaust system eventually installed in the Truck were in a defective condition when sold, causing the Truck and its components to be unreasonably dangerous to the Truck's drivers.

122.     The engine and component parts of the exhaust system were intended to, and did, reach Ms. Lockwood in a defective condition and without substantial change in its condition from when it left Detroit Diesel's control, or if its condition deteriorated, such deterioration was foreseeable and a result of a pre-existing defect inherent in the engine and component parts of the exhaust system.

123.     The engine and component parts of the exhaust system did not perform as safely as an ordinary consumer would have expected them to perform when used in an intended way.

124.     The defective engine and component parts of the exhaust system physically harmed Ms. Lockwood by poisoning her with carbon monoxide.

125.     The poisoning was a direct, proximate, and foreseeable result of the defective condition of the engine and component parts of the exhaust system which factually caused Ms. Lockwood's harm.

126.     By its nature, the engine and component parts of the exhaust system should not allow carbon monoxide to leak from the exhaust system into the cab and poison the driver.

127.     Detroit Diesel was aware the user of the engine and component parts of the exhaust system would be truck drivers, such as Jamie Lockwood.

128.     The engine and component parts of the exhaust system were intended to power a truck to pull a trailer and move cargo from place to place, with an understanding that it would idle at times in its daily use.

129.    Detroit Diesel was aware of issues with carbon monoxide leaks in their engines prior to putting their engine into the stream of commerce and eventually the Truck.

130.    By putting the engine and component parts of the exhaust system into the stream of commerce to be used as intended, Detroit Diesel expressly and implicitly represented the engine and component parts of the exhaust system would not allow exhaust gases to escape into the passenger cabin of the Truck and poison its intended users.

131.    Considering the risk-utility test, a reasonable person would conclude the possibility and seriousness of carbon monoxide poisoning from a leak in the engine and component parts of the exhaust system outweighs the additional burden or cost to Detroit Diesel of making the engine and component parts of the exhaust system safe with a feasible alternative design.

132.    Detroit Diesel had a duty to warn the intended users of its engine and component parts of the exhaust system, directly and/or through intermediaries, that the Truck was in a defective condition and unreasonably dangerous to the Truck driver.

133.    Detroit Diesel's duty to warn continued even after the engine and component parts of the exhaust system were sold.

134.    Detroit Diesel failed to warn the engine's buyer, owner, and/or drivers, either directly or through intermediaries, that the engine and component parts of the exhaust system were in a defective condition and unreasonably dangerous to the Truck's driver.

135.    Detroit Diesel failed to adequately instruct tractor-trailer mechanics, inspectors, technicians, repairmen, and/or drivers in how to detect and remedy the latent dangers in their products.

-17-

136.    Detroit Diesel is strictly liable for Jamie Lockwood's damages proximately caused by the defects in the engine and component parts of the exhaust system, regardless of their fault.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT IV
## NEGLIGENCE
## JAMIE LOCKWOOD v. DETROIT DIESEL CORPORATION

137.    Paragraphs 1-94 are incorporated herein as if set forth in full.

138.    Defendant Detroit Diesel acted through their employees, servants, agents, and apparent agents whose conduct was intended to further Defendant's business interests, and whose conduct was in the course and scope of their employment.

139.    Defendant Detroit Diesel had a duty not to expose truck drivers, including Jamie Lockwood, to a foreseeable risk of harm from the unreasonable danger of carbon monoxide poisoning from their engine and component parts of the exhaust system.

140.    Defendant breached this duty through its acts and omissions including:

      a.     Negligent design of the engine and component parts of the exhaust system;

      b.     Negligent testing of the engine and component parts of the exhaust system;

      c.     Negligent manufacturing of the engine and component parts of the exhaust system;

      d.     Negligent assembly of the engine and component parts of the exhaust system;

      e.     Failure to warn about defects in the engine and component parts of the exhaust system resulting from the negligent design and manufacturing of the engine and component parts of the exhaust system; and

      f.     Failure to properly instruct tractor-trailer mechanics, inspectors, technicians, repairmen, and/or drivers in how to detect and remedy the

latent dangers in their products.

141.    Detroit Diesel did not exercise the care required of reasonably careful product designers, testers, manufacturers, assemblers, and sellers.

142.    Detroit Diesel's negligence was the proximate cause of Ms. Lockwood's exposure to carbon monoxide and the injuries she suffered.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT V
## STRICT LIABILITY OF SELLER
## JAMIE LOCKWOOD v. RYDER VEHICLE SALES, LLC

143.    Paragraphs 1-94 are incorporated herein as if set forth in full.

144.    Ryder Vehicle Sales, LLC leased the Truck to DRT Logistics.

145.    Ryder Vehicle Sales, LLC is a seller of the Truck due to its leasing of the Truck to DRT Logistics.

146.    Ryder Vehicle Sales, LLC was engaged in the business of leasing semi-trucks, and specifically Freightliner Cascadia trucks including the Truck leased to DRT and driven by Jamie Lockwood.

147.    Ryder Vehicle Sales, LLC expected the Truck to reach the user or consumer, in this situation, a tractor-trailer driver, in the condition in which it was sold.

148.    Ryder Vehicle Sales, LLC leased the Truck to DRT in a defective condition which was unreasonably dangerous to tractor trailer drivers.

149.    Jamie Lockwood was unaware of the defective condition of the Truck when she drove it and was poisoned by carbon monoxide.

-19-

150.    Jamie Lockwood used the Truck as it was intended to be used.

151.    Jamie Lockwood was injured while using the defective product Ryder Vehicle

Sales, LLC put into the stream of commerce.

152.    The defective product, the Truck Ryder Vehicle Sales, LLC leased to DRT and

driven by Jamie Lockwood, was the proximate cause of her injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration

limit in Dauphin County.

## COUNT VI
## NEGLIGENCE
## JAMIE LOCKWOOD v. RYDER VEHICLE SALES, LLC

153.    Paragraphs 1-94 are incorporated herein as if set forth in full.

154.    Defendant Ryder Vehicle Sales, LLC acted through their employees, servants,

agents, and apparent agents whose conduct was intended to further Defendant's business

interests, and whose conduct was in the course and scope of their employment.

155.    Ryder Vehicle Sales, LLC took on the responsibility for servicing and maintaining

the Truck, when it leased the Truck to DRT Logistics.

156.    The Truck was brand new when it was leased to DRT Logistics.

157.    Ryder Vehicle Sales, LLC was aware the engine in the Truck had clamps, seals,

and gaskets which were intended to keep dangerous engine gases from escaping and getting

into the cab.

158.    Ryder Vehicle Sales, LLC was aware the clamps, seals, and gaskets intended to

keep dangerous gases from reaching the driver of the Truck improved their function over time

as they heated up and expanded.

-20-

159.    Ryder Vehicle Sales, LLC expected the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck to not fully function as intended before they had heated up and expanded to provide a safe seal.

160.    Ryder Vehicle Sales, LLC, despite this knowledge, failed to warn Jamie Lockwood of the risk carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal.

161.    Ryder Vehicle Sales, LLC, despite this knowledge, failed to test the Truck's cabin for carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal when it serviced the Truck on occasions before September 12, 2019.

162.    Ryder Vehicle Sales, LLC, despite this knowledge, failed to install a carbon monoxide monitor in the Truck's cabin before September 12, 2019.

163.    Ryder Vehicle Sales, LLC, despite this knowledge, failed to inspect the clamps, seals, and gaskets for signs they were leaking soot when it serviced the Truck on occasions before September 12, 2019.

164.    These failures were the proximate cause of Jamie Lockwood's injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT VII
## STRICT LIABILITY OF SELLER
## JAMIE LOCKWOOD v. RYDER TRANSPORTATION SERVICES

165.    Paragraphs 1-94 are incorporated herein as if set forth in full.

166.    Ryder Transportation Services leased the Truck to DRT Logistics.

167.    Ryder Transportation Services is a seller of the Truck due to its leasing of the

Truck to DRT Logistics.

168.    Ryder Transportation Services was engaged in the business of leasing semi-

trucks, and specifically Freightliner Cascadia trucks including the Truck leased to DRT and driven

by Jamie Lockwood.

169.    Ryder Transportation Services expected the Truck to reach the user or consumer,

in this situation, a tractor-trailer driver, in the condition in which it was sold.

170.    Ryder Transportation Services leased the Truck to DRT in a defective condition

which was unreasonably dangerous to tractor trailer drivers.

171.    Jamie Lockwood was unaware of the defective condition of the Truck when she

drove it and was poisoned by carbon monoxide.

172.    Jamie Lockwood used the Truck as it was intended to be used.

173.    Jamie Lockwood was injured while using the defective product Ryder

Transportation Services put into the stream of commerce.

174.    The defective product, the Truck Ryder Transportation Services leased to DRT

and driven by Jamie Lockwood, was the proximate cause of her injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration

limit in Dauphin County.

-22-

**COUNT VIII**
**NEGLIGENCE**
**JAMIE LOCKWOOD v. RYDER TRANSPORTATION SERVICES**

175.    Paragraphs 1-94 are incorporated herein as if set forth in full.

176.    Defendant Ryder Transportation Services acted through their employees, servants, agents, and apparent agents whose conduct was intended to further Defendant's business interests, and whose conduct was in the course and scope of their employment.

177.    Ryder Transportation Services took on the responsibility for servicing and maintaining the Truck, when it leased the Truck to DRT Logistics.

178.    The Truck was brand new when it was leased to DRT Logistics.

179.    Ryder Transportation Services was aware the engine in the Truck had clamps, seals, and gaskets which were intended to keep dangerous engine gases from escaping and getting into the cab.

180.    Ryder Transportation Services was aware the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck improved their function over time as they heated up and expanded.

181.    Ryder Transportation Services expected the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck to not fully function as intended before they had heated up and expanded to provide a safe seal.

182.    Ryder Transportation Services, despite this knowledge, failed to warn Jamie Lockwood of the risk carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal.

-23-

183.     Ryder Transportation Services, despite this knowledge, failed to test the Truck's cabin for carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal when it serviced the Truck on occasions before September 12, 2019.

184.     Ryder Transportation Services, despite this knowledge, failed to install a carbon monoxide monitor in the Truck's cabin before September 12, 2019.

185.     Ryder Transportation Services, despite this knowledge, failed to inspect the clamps, seals, and gaskets for signs they were leaking soot when it serviced the Truck on occasions before September 12, 2019.

186.     These failures were the proximate cause of Jamie Lockwood's injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT IX
### STRICT LIABILITY OF SELLER
### JAMIE LOCKWOOD v. RYDER TRUCK RENTAL

187.     Paragraphs 1-94 are incorporated herein as if set forth in full.

188.     Ryder Truck Rental leased the Truck to DRT Logistics.

189.     Ryder Truck Rental is a seller of the Truck due to its leasing of the Truck to DRT Logistics.

190.    Ryder Truck Rental was engaged in the business of leasing semi-trucks, and specifically Freightliner Cascadia trucks including the Truck leased to DRT and driven by Jamie Lockwood.

191.    Ryder Truck Rental expected the Truck to reach the user or consumer, in this situation, a tractor-trailer driver, in the condition in which it was sold.

192.    Ryder Truck Rental leased the Truck to DRT in a defective condition which was unreasonably dangerous to tractor trailer drivers.

193.    Jamie Lockwood was unaware of the defective condition of the Truck when she drove it and was poisoned by carbon monoxide.

194.    Jamie Lockwood used the Truck as it was intended to be used.

195.    Jamie Lockwood was injured while using the defective product Ryder Truck Rental put into the stream of commerce.

196.    The defective product, the Truck Ryder Truck Rental leased to DRT and driven by Jamie Lockwood, was the proximate cause of her injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT X
## NEGLIGENCE
## JAMIE LOCKWOOD v. RYDER TRUCK RENTAL

197.    Paragraphs 1-94 are incorporated herein as if set forth in full.

198.    Defendant Ryder Truck Rental acted through their employees, servants, agents, and apparent agents whose conduct was intended to further Defendant's business interests, and whose conduct was in the course and scope of their employment.

-25-

199.    Ryder Truck Rental took on the responsibility for servicing and maintaining the Truck, when it leased the Truck to DRT Logistics.

200.    The Truck was brand new when it was leased to DRT Logistics.

201.    Ryder Truck Rental was aware the engine in the Truck had clamps, seals, and gaskets which were intended to keep dangerous engine gases from escaping and getting into the cab.

202.    Ryder Truck Rental was aware the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck improved their function over time as they heated up and expanded.

203.    Ryder Truck Rental expected the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck to not fully function as intended before they had heated up and expanded to provide a safe seal.

204.    Ryder Truck Rental, despite this knowledge, failed to warn Jamie Lockwood of the risk carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal.

205.    Ryder Truck Rental, despite this knowledge, failed to test the Truck's cabin for carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal when it serviced the Truck on occasions before September 12, 2019.

-26-

206.   Ryder Truck Rental, despite this knowledge, failed to install a carbon monoxide monitor in the Truck's cabin before September 12, 2019.

207.   Ryder Truck Rental, despite this knowledge, failed to inspect the clamps, seals, and gaskets for signs they were leaking soot when it serviced the Truck on occasions before September 12, 2019.

208.   These failures were the proximate cause of Jamie Lockwood's injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT XI
### STRICT LIABILITY OF SELLER
### JAMIE LOCKWOOD v. RYDER TRUCK RENTAL, INC.

209.   Paragraphs 1-94 are incorporated herein as if set forth in full.

210.   Ryder Truck Rental, Inc. leased the Truck to DRT Logistics.

211.   Ryder Truck Rental, Inc. is a seller of the Truck due to its leasing of the Truck to DRT Logistics.

212.   Ryder Truck Rental, Inc. was engaged in the business of leasing semi-trucks, and specifically Freightliner Cascadia trucks including the Truck leased to DRT and driven by Jamie Lockwood.

213.   Ryder Truck Rental, Inc. expected the Truck to reach the user or consumer, in this situation, a tractor-trailer driver, in the condition in which it was sold.

214.   Ryder Truck Rental, Inc. leased the Truck to DRT in a defective condition which was unreasonably dangerous to tractor trailer drivers.

-27-

215.    Jamie Lockwood was unaware of the defective condition of the Truck when she drove it and was poisoned by carbon monoxide.

216.    Jamie Lockwood used the Truck as it was intended to be used.

217.    Jamie Lockwood was injured while using the defective product Ryder Truck Rental, Inc. put into the stream of commerce.

218.    The defective product, the Truck Ryder Truck Rental, Inc. leased to DRT and driven by Jamie Lockwood, was the proximate cause of her injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

**COUNT XII**
**NEGLIGENCE**
**JAMIE LOCKWOOD v. RYDER TRUCK RENTAL, INC.**

219.    Paragraphs 1-94 are incorporated herein as if set forth in full.

220.    Defendant Ryder Truck Rental, Inc. acted through their employees, servants, agents, and apparent agents whose conduct was intended to further Defendant's business interests, and whose conduct was in the course and scope of their employment.

221.    Ryder Truck Rental, Inc. took on the responsibility for servicing and maintaining the Truck, when it leased the Truck to DRT Logistics.

222.    The Truck was brand new when it was leased to DRT Logistics.

223.    Ryder Truck Rental, Inc. was aware the engine in the Truck had clamps, seals, and gaskets which were intended to keep dangerous engine gases from escaping and getting into the cab.

-28-

224.     Ryder Truck Rental, Inc. was aware the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck improved their function over time as they heated up and expanded.

225.     Ryder Truck Rental, Inc. expected the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck to not fully function as intended before they had heated up and expanded to provide a safe seal.

226.     Ryder Truck Rental, Inc., despite this knowledge, failed to warn Jamie Lockwood of the risk carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal.

227.     Ryder Truck Rental, Inc., despite this knowledge, failed to test the Truck's cabin for carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal when it serviced the Truck on occasions before September 12, 2019.

228.     Ryder Truck Rental, Inc., despite this knowledge, failed to install a carbon monoxide monitor in the Truck's cabin before September 12, 2019.

229.     Ryder Truck Rental, Inc., despite this knowledge, failed to inspect the clamps, seals, and gaskets for signs they were leaking soot when it serviced the Truck on occasions before September 12, 2019.

230.     These failures were the proximate cause of Jamie Lockwood's injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT XIII
## STRICT LIABILITY OF SELLER
## JAMIE LOCKWOOD v. RYDER SYSTEM, INC.

231.   Paragraphs 1-94 are incorporated herein as if set forth in full.

232.   Ryder System, Inc. leased the Truck to DRT Logistics.

233.   Ryder System, Inc. is a seller of the Truck due to its leasing of the Truck to DRT Logistics.

234.   Ryder System, Inc. was engaged in the business of leasing semi-trucks, and specifically Freightliner Cascadia trucks including the Truck leased to DRT and driven by Jamie Lockwood.

235.   Ryder System, Inc. expected the Truck to reach the user or consumer, in this situation, a tractor-trailer driver, in the condition in which it was sold.

236.   Ryder System, Inc. leased the Truck to DRT in a defective condition which was unreasonably dangerous to tractor trailer drivers.

237.   Jamie Lockwood was unaware of the defective condition of the Truck when she drove it and was poisoned by carbon monoxide.

238.   Jamie Lockwood used the Truck as it was intended to be used.

239.   Jamie Lockwood was injured while using the defective product Ryder System, Inc. put into the stream of commerce.

240.   The defective product, the Truck Ryder System, Inc. leased to DRT and driven by Jamie Lockwood, was the proximate cause of her injuries.

-30-

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

## COUNT XIV
## NEGLIGENCE
## JAMIE LOCKWOOD v. RYDER SYSTEM, INC.

241.    Paragraphs 1-94 are incorporated herein as if set forth in full.

242.    Defendant Ryder System, Inc. acted through their employees, servants, agents, and apparent agents whose conduct was intended to further Defendant's business interests, and whose conduct was in the course and scope of their employment.

243.    Ryder System, Inc. took on the responsibility for servicing and maintaining the Truck, when it leased the Truck to DRT Logistics.

244.    The Truck was brand new when it was leased to DRT Logistics.

245.    Ryder System, Inc. was aware the engine in the Truck had clamps, seals, and gaskets which were intended to keep dangerous engine gases from escaping and getting into the cab.

246.    Ryder System, Inc. was aware the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck improved their function over time as they heated up and expanded.

247.    Ryder System, Inc. expected the clamps, seals, and gaskets intended to keep dangerous gases from reaching the driver of the Truck to not fully function as intended before they had heated up and expanded to provide a safe seal.

248.    Ryder System, Inc., despite this knowledge, failed to warn Jamie Lockwood of the risk carbon monoxide-one of the dangerous engine gases intended to be expelled through the

-31-

exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal.

249.    Ryder System, Inc., despite this knowledge, failed to test the Truck's cabin for carbon monoxide-one of the dangerous engine gases intended to be expelled through the exhaust system-could escape through the clamps, seals, and gaskets before they had heated up and expanded to provide a safe seal when it serviced the Truck on occasions before September 12, 2019.

250.    Ryder System, Inc., despite this knowledge, failed to install a carbon monoxide monitor in the Truck's cabin before September 12, 2019.

251.    Ryder System, Inc., despite this knowledge, failed to inspect the clamps, seals, and gaskets for signs they were leaking soot when it serviced the Truck on occasions before September 12, 2019.

252.    These failures were the proximate cause of Jamie Lockwood's injuries.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of the arbitration limit in Dauphin County.

Respectfully submitted,

**MCNEES WALLACE & NURICK LLC**

By: _____

David Joseph Chapman, Esq.
I.D. No. 209519
Logan Hetherington, Esq.
I.D. No. 326048
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 237-5375
jchapman@mcneeslaw.com
lhetherington@mcneeslaw.com

*Attorneys for Plaintiff*

-33-

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

MCNEES WALLACE & NURICK LLC

By:_____
David Joseph Chapman
I.D. No. 209519
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 232-8000
jchapman@mcneeslaw.com

*Attorneys for Petitioners*

Dated: March 12, 2021

-4-

## VERIFICATION BASED UPON PERSONAL KNOWLEDGE
## AND INFORMATION OBTAINED THROUGH COUNSEL

I, Jamie Lockwood, verify that I am the Plaintiff in the foregoing action and that the

attached Complaint is based upon information which has been gathered by my counsel in the

preparation of this lawsuit. The language of the Complaint to the extent that it is based upon

information that I have given to my counsel is true and correct to the best of my knowledge,

information, and belief. To the extent that the contents of the Complaint are that of counsel, I

relied upon counsel making this Verification.

I understand that intentional false statements herein are subject to the penalties of 18

Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.


Date: _3/12/2021_            Jamie Lockwood

**CERTIFICATE OF SERVICE**

I hereby certify that on this date a true and correct copy of the foregoing document was

served, via electronic mail, and first-class mail (when requested), upon the following:

Larry Britton, Esquire
Benjamin Britton, Esquire
Shannon Trevithick, Esquire
**Britton & Associates SC**
1035 W. Glen Oaks Lane #100
Mequon, WI 53092

John Timmer, Esquire
Alice Johnston, Esquire
**Schnader Harrison Segal & Lewis LLP**
1600 Market Street, Suite 3600
Philadelphia, PA 19103

*Attorneys for Ryder Vehicle Sales, LLC*


MCNEES WALLACE & NURICK LLC


By:_____
David Joseph Chapman
I.D. No. 209519
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 232-8000
jchapman@mcneeslaw.com

*Attorneys for Plaintiff*

Dated: March 12, 2021